AUGUST LUCHOW, INC. *v.* UNITED STATES (No. 3903) [1]

[1] T. D. 48011.

United States Court of Customs and Patent Appeals, November 4, 1935

*Pickrell & McDonald* for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Richard E. FitzGibbon* and *Charles J. Miville*, special attorneys, of counsel), for the United States.

[Oral argument October 8, 1935, by Mr. McDonald and Mr. Jackson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain beer, "containing not more than 3.2% of alcohol by weight, manufactured or produced in Germany and imported into the United States, and placed in bonded warehouse * * *, from which warehouse said Beer was withdrawn on September 8, 1933, for consumption within the United States", properly dutiable at $1 per gallon under paragraph 805 of the Tariff Act of 1930, as assessed by the collector at the port of Boston, rather than at $5 per barrel under the Beer Act of March 22, 1933, 48 Stat. 16, as claimed by appellant.

The statutes, so far as pertinent, read as follows:

PAR. 805. Ale, porter, stout, beer, and fluid malt extract, $1 per gallon; malt extract, solid or condensed, 60 per centum ad valorem.

AN ACT To provide revenue by the taxation of certain nonintoxicating liquor, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That (a) there shall be levied and collected on all beer, lager beer, ale, porter, wine, similar fermented malt or vinous liquor, and fruit juice, containing one-half of 1 per centum or more of alcohol by volume, and not more than 3.2 per centum of alcohol by weight, brewed or manufactured and, on or after the effective date of this Act, sold, or removed for consumption or sale, within the United States, by whatever name such liquors or fruit juices may be called, a tax of $5 for every barrel containing not more than thirty-one gallons, and at a like rate for any other quantity or for the fractional parts of a barrel authorized and defined by law, to be collected under the provisions of

existing law. The tax imposed by this section upon any beverage shall, if any tax is now imposed thereon by law, be in lieu of such tax from the time the tax imposed by this section takes effect. Nothing in this section shall in any manner affect the internal-revenue tax on beer, lager beer, ale, porter, wine, similar fermented malt or vinous liquor, or fruit juice, containing more than 3.2 per centum of alcohol by weight, or less than one-half of 1 per centum of alcohol by volume. As used in this section the term "United States" includes only the States, the Territories of Alaska and Hawaii, and the District of Columbia.

(b) Paragraph "First" of section 3244 of the Revised Statutes (U. S. C., title 26, sec. 202) is amended to read as follows:

First. Brewers shall pay $1,000 in respect of each brewery. Every person who manufactures fermented liquors of any name or description for sale, from malt, wholly or in part, or from any substitute therefor, containing one-half of 1 per centum or more of alcohol by volume, shall be deemed a brewer.

(c) Nothing in this Act shall be construed as repealing any special tax or administrative provision of the internal revenue laws applicable in respect of any of the following containing one-half of 1 per centum or more of alcohol by volume and not more than 3.2 per centum of alcohol by weight: Beer, ale, porter, wine, similar fermented malt or vinous liquor, or fruit juice.

\*        \*        \*        \*        \*        \*        \*

SEC. 3. (a) Nothing in the National Prohibition Act, as amended and supplemented, shall apply to any of the following, or to any act or failure to act in respect of any of the following, containing not more than 3.2 per centum of alcohol by weight: Beer, ale, porter, wine, similar fermented malt or vinous liquor, or fruit juice; but the National Prohibition Act, as amended and supplemented, shall apply to any of the foregoing, or to any act or failure to act in respect of any of the foregoing, contained in bottles, casks, barrels, kegs, or other containers, not labeled and sealed as may be prescribed by regulations.

\*        \*        \*        \*        \*        \*        \*

SEC. 4. (a) The manufacturer for sale of beer, ale, porter, wine, similar fermented malt or vinous liquor, or fruit juice, containing one-half of 1 per centum of alcohol by volume and not more than 3.2 per centum of alcohol by weight, shall, before engaging in business, secure a permit authorizing him to engage in such manufacture, which permit shall be obtained in the same manner as a permit under the National Prohibition Act, as amended and supplemented, to manufacture intoxicating liquor, and be subject to all the provisions of law relating to such a permit. Such permit may be issued to a manufacturer for sale of any such fermented malt or vinous liquor or fruit juice, containing less than one-half of 1 per centum of alcohol by volume, if he desires to take advantage of the provisions of paragraph (2) of subsection (b) of this section. No permit shall be issued under this section for the manufacture of fermented malt or vinous liquor or fruit juice in any State, Territory, or the District of Columbia, or political subdivision of any State or Territory, if such manufacture is prohibited by the law thereof.

(b) (1) Such permit shall specify a maximum alcoholic content permissible for such fermented malt or vinous liquor or fruit juice at the time of withdrawal from the factory or other disposition, which shall not be greater than 3.2 per centum of alcohol by weight, nor greater than the maximum alcoholic content permissible under the law of the State, Territory, or the District of Columbia, or the political subdivision of a State or Territory, in which such liquor or fruit juice is manufactured.

The sole issue in the case is whether the Beer Act, *supra,* was intended by the Congress to repeal paragraph 805, *supra.*

It is contended by counsel for appellant that it clearly appears from the legislative history of the Beer Act and the "History of the Times" that it was the intention of the Congress to provide a tax of $5 per barrel, containing not more than thirty-one gallons, on all beer sold, or removed for consumption or sale, within the United States, which contained one-half of 1 per centum, and not more than 3.2 per centum of alcohol by weight, whether imported into, or brewed or manufactured within, the United States.

The court below, in an opinion by Evans, Judge, fully considered all of the arguments presented here by counsel for appellant, and held that paragraph 805, *supra*, was not repealed by the Beer Act, *supra*. In analyzing the latter act, the court said:

In our opinion there is little if any need to resort to rules of construction. The statute appears to be clear and unambiguous and provides in general terms that there shall be levied and collected on all beer, lager beer, etc., of a certain description "brewed or manufactured *and* sold or removed for consumption or sale within the United States—a tax of $5." Supplement VII, Code of the Laws of the United States, *supra* (Beer Act). Counsel for the importer admits that the words "within the United States" modify the words "brewed or manufactured." Having admitted, as it must be admitted, that the phrase "within the United States" modifies the terms "brewed or manufactured", the act reads: "* * * there shall be levied and collected on all beer, lager beer, * * * [which is] brewed or manufactured * * * within the United States." So that we have beer and lager beer manufactured in the United States subject to the tax in question. We have the same grammatical construction so far as the word "sold" is concerned; that is, that "* * * there shall be levied and collected on all beer, lager beer, * * * [which is] sold * * * within the United States." The conjunction "or" connects two coordinate words or phrases. Therefore, the expression "removed for consumption or sale" is coordinate with "sold", and with "manufactured" and with "brewed."

Therefore, the expression "removed for consumption or sale" is a coordinate predicate with "sold", with "manufactured" and with "brewed." So that the language of the statute unquestionably means to apply the tax to beer and lager beer brewed or manufactured in the United States and sold within United States, and beer and lager beer, brewed and manufactured in the United States and removed for consumption or sale therein. If this is the correct construction of the sentence, as we believe it so to be, the repealing clause, so-called, can apply only to such beer as is brewed or manufactured within the United States, because the language of the statute is: "The tax imposed by this section on any beverage," etc. The only tax imposed by the section on beer is the tax on such beer as is brewed and manufactured in the United States.

In its report to accompany H. R. 3341, which later became the Beer Act of March 22, 1933, Report No. 3, 73rd Congress, 1st session, the Committee on Ways and Means of the House of Representatives, among other things, said:

The bill provides for a manufacturers' *excise tax* of $5 per barrel on all beer, lager beer, ale, porter, or other similar fermented liquor, containing one-half of 1 per cent or more of alcohol by volume, and not more than 3.2 per cent of alcohol by weight, which is equivalent to 4 per cent by volume. The Treasury Depart-

ment estimated that a tax of $5 per barrel would produce a revenue of from $125,000,000 to $150,000,000 in the fiscal year ending June 30, 1934. These figures were based upon a probable consumption of from 25,000,000 to 30,000,000 barrels of 2.75 per cent beer in the States in which its sale would be legal upon the enactment of this bill or in which its sale may reasonably be expected to be made legal in the near future. These States have a total population (1930) of 73,521,000. The beer provided for in the bill is of a slightly higher alcoholic content, and being more palatable, would be consumed more generally than 2.75 beer.

It must be remembered that whereas in 1914 there were 1,392 breweries in this country producing over 66,000,000 barrels of tax-paid beer, there are to-day but 164 plants equipped to produce the beverage taxed by this bill. Naturally, it will take some time for the breweries to be able to supply the probable demand.

\*        \*        \*        \*        \*        \*        \*

It is estimated that the legalization of beer of 3.2 per cent of alcohol by weight will give employment to approximately 75,000 men in the breweries and about 225,000 men in its retail distribution. In addition, there will be a very large number of men indirectly employed through the demands made by the brewing industry upon other industries. Reference has already been made to the necessity for certain farm products in the manufacture of malt beverages. The expansion of production in the brewing industry would require an estimated capital expenditure of $360,000,000 within the next year for rehabilitation and modernization of plants, and the provisions for retail distribution would require a large outlay also. The money spent for production and distribution would give employment to men in many lines of business. There would be a demand for bottles, barrels, hoops, crowns, labels, cases, glassware, refrigerating equipment, machinery, etc. The railroads and truck lines would be benefited by increased tonnage. The psychological effect of the stimulation of these industries upon business in general would no doubt be far reaching. According to a statement made before your committee by a representative of the committee on industrial rehabilitation, three men are put to work in other lines of business for each man put to work in the capital-goods industries. (Italics ours.)

It will be observed that the statute in question provides a tax of $5 per barrel of not more than thirty-one gallons on beer containing "one-half of 1 per centum or more of alcohol by volume, and not more than 3.2 per centum of alcohol by weight, brewed or manufactured *and*, on or after the effective date of this Act, *sold*, or removed for consumption or sale, within the United States." (Italics ours.) It is difficult to understand how there could be any misunderstanding as to the meaning of those provisions. Manifestly, they do not impose a tax on all beer of the prescribed alcoholic content, sold, or removed for consumption or sale, within the United States, but, on the contrary, impose a tax on beer of the prescribed alcoholic content, brewed or manufactured, and sold, or removed for consumption or sale, within the United States, and do not relate to imported beer.

But, it is argued by counsel for appellant, the provision in the act that the—

tax imposed by this section upon any beverage shall, if any tax is now imposed thereon by law, be in lieu of such tax from the time the tax imposed by this section takes effect,

indicates that it was the purpose of the Congress to repeal paragraph 805, *supra*, and to levy a tax of $5 per barrel on beer imported into the United States, as well as on beer brewed or manufactured within the United States, and that, therefore, the conjunction "and", contained in the clause—

brewed or manufactured and, on or after the effective date of this Act, sold, or removed for consumption or sale, within the United States,

should, in order to give effect to the legislative purpose, be read as though it were written "or."

It is so clear as to require no discussion, that the word "beverage", contained in the provisions above quoted, refers only to the beverages described in the first sentence of the act, that is, those brewed or manufactured and sold, or removed for consumption or sale, within the United States.

Although it is true, as argued by counsel for appellant, that it is permissible, when necessary to do so in order to give effect to the legislative purpose, to read the conjunction "and" as though it were written "or", it is not permissible under other circumstances.

In the case at bar, we think it is evident that the language of the statute is entirely consistent with the purpose of the Congress, which, according to the history of the times and the report of the Committee on Ways and Means of the House of Representatives, was to raise additional revenue, and to give employment to thousands of our citizens, who, at the time, were unemployed.

We find nothing whatsoever in the language of the statute, its legislative history, or the "History of the Times" to indicate that the Congress intended to repeal paragraph 805, *supra*. On the contrary, we think it was intended that the statute, at least so far as the issues here are concerned, should be construed as written, and such will be our holding.

For the reasons stated, the judgment is *affirmed*.